O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Monica Adriana RUIZ YARLEQUE,<br><br>      Petitioner,<br> v.<br><br>Kristi NOEM, Secretary, U.S. Department of Homeland Security; Pamela BONDI, U.S. Attorney General; Todd LYONS, Acting Director, Immigration and Customs Enforcement; Ernesto SANTACRUZ JR., Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; Fereti SEMAIA, Warden, Adelanto ICE Processing Center; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY<br><br>      Respondents. | Case No.: 5:25-cv-02836-MEMF-SP<br><br>**ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 5-1]** |

  Before the Court is an Ex Parte Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction filed by Petitioner. Dkt. No. 5-1. For the reasons stated herein, the Court GRANTS the Ex Parte Application.

# I. Background

## A. Factual Background

This factual background is taken from the allegations in the Petitioner's Petition for Writ of Habeas Corpus, her TRO Motion, and the accompanying exhibits. *See* Dkt. No. 5-1 ("Motion"); Dkt. No. 1 ("Petition"). Except as noted, Respondents do not controvert these factual allegations at this stage. *See* Dkt. No. 8.

### i. Petitioner

Petitioner, Monica Adriana Ruiz Yarleque, is a citizen of Peru, who has lived in California since 2002. Motion at 1, 10; *see also* Guarderas Decl. ¶ 5, Ex. B, Dkt. No. 5-2.

### ii. Respondents

Respondents are Pamela Bondi, United States Attorney General; Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Ernesto Santacruz, Jr., Acting Director of the Los Angeles ICE Field Office of ICE's Enforcement and Removal Operations division; Fereti Semaia, Petitioner's immediate custodian and warden for the Adelanto ICE Processing Center; Executive Office for Immigration Review ("EOIR"), the federal agency within the Department of Justice responsible for implementing the Immigration and Nationality Act ("INA") in removal proceedings; DHS, the federal agency responsible for implementing the INA; and ICE, the federal agency within DHS responsible for implementing the INA (collectively referred to as "Respondents" or the "Government"). *See* Petition at ¶¶ 18-25.

### iii. Petitioner's Detention Allegations

On or about April 11, 2002, Petitioner entered the United States without inspection through San Ysidro, California. Guarderas Decl. ¶ 5. Petitioner attempted to enter the United States prior in 1999 with the use of a fraudulent visa, and in lieu of removal, she voluntarily returned to Peru. *See* Motion at 10; Guarderas Decl. ¶ 6.

Petitioner has been married to a U.S. citizen since July 30, 2016, and in 2019, her husband initiated a process to regularize her immigration status by submitting a family petition for her. Guarderas Decl. ¶ 7. On July 2, 2020, Petitioner was granted an Immediate Relative Petition form I-

130 by the United States Citizenship Immigration Services ("USCIS"). *See* Ex. C at 10, Dkt. No. 5-2. However, the process never culminated in Petitioner's lawful immigration status because the marriage became too abusive for her to bear. *See* Guarderas Decl. ¶ 8.

Since October 2023, Petitioner and her husband have been engaged in divorce proceedings. *Id.* ¶ 12. Petitioner has sought protection under the Violence Against Women Act ("VAWA") based on the abuse and filed a self-petition with USCIS, which has been confirmed delivered to USCIS, but no formal notice of receipt has been provided to Petitioner. Motion at 11. The abuse to Petitioner has continued during her separation with her husband. *See id.*

Petitioner was arrested twice between October 2020 and January 2023. *See* Guarderas Decl. ¶¶ 9-10. The October 2020 arrest was on suspicion of violating California Penal Code §§ 243(e) (battery), 22810(g) (use of tear gas as a weapon), and the January 2023 arrest was on suspicion of violating California Penal Code § 273.5(a) (willful infliction of corporal injury). *Id.* Both arrests were tied to Petitioner's attempt to defend herself from her husband's domestic violence. *See id.*; *see also* Motion at 11. Petitioner was never convicted of any crime as result of either arrest, and the charges from the October 2020 arrest were dismissed as of November 2, 2021. *See id.* ¶¶ 9, 11; *see also* Motion at 11.[1]

On September 19. 2025, Petitioner was arrested by ICE officers in San Bernardino County while she was attending a hearing related to her divorce proceedings. *See* Motion at 12; Ex. C at 9. Petitioner alleges that her husband informed ICE officers that she would be in court that day. *See* Guarderas Decl. ¶ 13; Ex. C at 9 (noting that Petitioner came to ICE's attention "pursuant to a lead that [she] would be in the city of San Bernardino for court"). She was issued a Notice to Appear ("NTA") pursuant to Section 240 of the INA, 8 U.S.C. § 1229(a), to place her in removal proceedings. *See id.*; Motion at 12; *see also* Ex. D at 12, Dkt. No. 5-2. She was charged with being inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i), 1182(a)(7)(A)(i)(I) as "someone who is present

---

[1] The Court notes that it does not appear Petitioner's criminal history triggers mandatory detention under 8 U.S.C. § 1226(c) as Petitioner was never convicted of any crimes and the charges for the October 2020 arrest were dropped. Respondents do not argue in their Opposition that it does. *See generally* Opposition. Also, Petitioner was never charged by DHS as inadmissible or deportable for the 2020 or 2023 criminal charges. *See* Ex. D at 12; *see also* Ex. E at 15.

1  without admission in the United States and who lacked proper entry documents at the time she is
2  seeking admission." Motion at 12; *see also* Ex. D at 12, Dkt. No. 5-2; Ex. E at 15, Dkt. No. 5-2.

3        Petitioner is and continues to be detained at Adelanto ICE Processing Center in Adelanto,
4  California. *See* Motion at 12. On September 30, 2025, Petitioner filed a motion for bond in
5  immigration court. Guarderas Decl. ¶ 16. The Department of Homeland Security ("DHS") argued
6  that Immigration Judge ("IJ") had no authority to conduct a bond hearing for the Petitioner because
7  she was an "applicant for admission" subject to mandatory detention under 8 U.S.C. §
8  1225(b)(2)(A). *See* Ex. F at 18. On October 8, 2025, the IJ denied the motion in a form order which
9  checked the box for "Denied, because" and filled in the words "No jurisdiction." Ex. G at 21, Dkt.
10 No. 5-2

11       Prior to the request for a bond hearing, the Board of Immigration Appeals ("BIA") issued its
12 decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), in which it found that
13 an IJ lacks the "authority to hear a bond request filed by an applicant for admission" under 8 U.S.C.
14 § 1225(b), because the noncitizen is an "applicant for admission" as someone "present in the U.S.
15 without admission" and thus subject to "mandatory detention." *See id.* at 220-24. BIA decisions are
16 binding on IJs. 8 C.F.R § 1003.1(g).

17       **B.  Procedural History**

18       On October 27, 2025, Petitioner filed a Petition for Writ of Habeas Corpus against
19 Respondents. *See generally* Dkt. No. 1 ("Petition" or "Pet."). Petitioner alleged violations of (1) 8
20 U.S.C. § 1226(a), (2) 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, (3) the Administrative Procedure Act,
21 5 U.S.C. § 706(2), and (4) the Fifth Amendment Due Process Clause. *See id.* ¶¶ 53-66.

22       On the same day, Petitioner filed an Ex Parte Application for Temporary Restraining Order
23 and Order to Show Cause Regarding Preliminary Injunction. Dkt. No. 5-1 ("Motion"). Respondents
24 filed an Opposition on October 29, 2025. Dkt. No. 8 ("Opposition"). On October 30, 2025, Petitioner
25 filed a Reply. Dkt. No. 10 ("Reply").[2] On October 31, 2025, the Court held on a hearing on the
26 Motion.

27
28 [2] For her TRO, Petitioner only brings claims under a violation of 8 U.S.C. § 1226(a) and a violation of the DHS and EOIR Bond Regulations, *see* Pet. ¶¶ 53-59, and not under the APA or DPC, *see generally* Motion.

4

## II. Applicable Law

### A. Habeas Petitions

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). It is firmly established that Section 2241 "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

### B. Ex Parte Applications

"[C]ircumstances justifying the issuance of an ex parte order are extremely limited." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, ex parte applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an ex parte application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex Parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

This Court's operative Civil Standing Order states: "Counsel are reminded that ex parte applications are solely for extraordinary relief. Applications that do not meet the requirements set forth in Local Rule 7-19 will not be considered. Sanctions may be imposed for misuse of ex parte applications." Civil Standing Order § XII.

### C. Temporary Restraining Orders

The preliminary injunction and temporary restraining order standards are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Accordingly, the Court will outline the governing law for granting a preliminary injunction. A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20 ("*Winter* Test").

The Ninth Circuit also recognizes a "serious questions" variation of the *Winter* test. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this variation, "a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of the hardships tips sharply in favor of plaintiff; and injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

A preliminary injunction is "an extraordinary and drastic remedy" and "should not be granted unless the movant, *by clear showing*, carries the burden of persuasion." *Id.* at 1072 (quotations omitted). At this stage, the Court is only determining whether Plaintiffs have met their burden for a temporary restraining order. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). **Accordingly, this Order is not a final decision on the merits of any claim, nor is it a decision on the merits of the factual assertions either party made in support of any claim.**

### D. Principles of Statutory Interpretation

The Ninth Circuit has stated that "divining [the] meaning . . . of [t]he complex provisions of the INA . . . is ordinarily not for the faint of heart." *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (en banc). Yet even when a statute is ambiguous or internally contradictory, courts must "use every

tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

The Court's analysis "begins with the language of the statute." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2022) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004)). "When deciding whether language is plain, [the Court] must read the words in their context and with a view to their place in the overall statutory scheme." *San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240 (9th Cir. 2022), *aff'd*, 602 U.S. 222 (2024) (internal quotations omitted). "[O]ne of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning[.]") (internal citations omitted).

### E.  Relevant Immigration Statutes

The following statutory provisions are relevant to the matter before the Court.

#### i.  8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) reads as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g).

#### ii.  8 U.S.C. § 1252(b)(9)

8 U.S.C. § 1252(b)(9) reads as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove a[] [noncitizen] from the United States under this subchapter shall be available

only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

### iii.  8 U.S.C. § 1252(a)(5)

8 U.S.C. § 1252(a)(5) reads as follows:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory). 8 U.S.C.A. § 1252 (West)

8 U.S.C. § 1252(a)(5).

### iv.  8 U.S.C. § 1225

8 U.S.C. § 1225(a)(1) reads as follows:

A[] [noncitizen] present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including a[] [noncitizen] who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

8 U.S.C. § 1225(b)(2)(A) reads as follows:

Subject to subparagraphs (B) and (C), in the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

### v.  8 U.S.C. § 1226

8 U.S.C. § 1226(a)(1) reads as follows:

On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-- may continue to detain the arrested [noncitizen]; and

8 U.S.C. § 1226(a)(1).

8 U.S.C. §§ 1226(a)(2)(a), (b) reads as follows:

On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-- … may release the [noncitizen] on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole

8 U.S.C. §§ 1226(a)(2)(a), (b).

### III. Discussion

#### A. The Court Has Jurisdiction to Hear Petitioner's Claims under 8 U.S.C. § 1252(g).

Respondents contend that 8 U.S.C. § 1252(g) deprives the "courts of jurisdiction, including habeas corpus jurisdiction, to review" Petitioner's claims, because it "stem[s] from [her] detention during removal proceedings," which in turn arises "from the decision to commence such proceedings against [her]." *See* Opposition at 5. Petitioner claims that its challenge to detention *during* the removal proceedings is not a challenge to commence proceedings. *See* Reply at 5-6.

Section 1252(g) should be ready narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018) (holding that constitutional challenge to prolonged detention without bond-hearing requirement is not barred by 8 U.S.C. § 1226(e)). "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Reno*, 525 U.S. at 482. Thus, Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three

listed actions of the Attorney General." *Jennings*, 583 U.S. at 294. *See Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 884-85 (C.D. Cal. 2025).

Here, Petitioner's habeas claims do not implicate any of the three discrete, discretionary actions of the Attorney General under § 1252(g). Petitioner challenges whether she is subject to mandatory detention *during* her removal proceedings, and not the "decision to commence such proceeding." *See* Petition at 15-17; Motion at 8-10; *see also* Reply at 5-6. Thus, this is a challenge to "the extent of the Government's detention authority[, which] is not a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings*, 583 U.S. at 296. In fact, this is a purely legal question, and the Ninth Circuit has held that courts "have jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority … even if the answer to that legal question ... forms the backdrop against which the Attorney General later will exercise discretionary authority.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)). Therefore, Respondents' reading of Section 1252(g) is improper and inconsistent with Supreme Court and Ninth Circuit precedent. Accordingly, the Court has jurisdiction to hear Petitioner's claims under Section 1252(g).

### B. The Court Has Jurisdiction to Hear Petitioner's Claims under 8 U.S.C. § 1252(b)(9).

Respondents contend that under 8 U.S.C. § 1252(b)(9), review of all claims arising from deportation proceedings can only be reviewed by a court of appeals in a petition for review, and when combined with 8 U.S.C. § 1252(a)(5), any issue, legal or factual, from any removal-related activity can be reviewed only through the petition-for-review process. *See* Opposition at 6-7 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). So, Respondents argue that the Court lacks jurisdiction of this review, because "Petitioner challenges the government's decision and action to detain [her], which arises from DHS's decision to commence removal proceedings, and is thus an "action taken . . . to remove [her] from the United States." *See id.* at 8; *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018); *Jennings*, 583 U.S. at 319 (Thomas, J., concurring)). Petitioner contends

1  that Respondents "conflate removal with custody and bond," and Petitioner is not asking for review
2  of a final removal order, making Section 1252(b)(9) inapplicable. *See* Reply at 6-7

3  Sections 1252(a)(5) and (b)(9) were intended to "channel judicial review over *final orders of
4  removal* to the courts of appeals," and not to "foreclose *all* judicial review of agency actions."
5  *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added in part). It was designed to
6  "limit all [noncitizens] to one bite of the apple with regard to challenging an order of removal."
7  *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (citations omitted). And does not "bar
8  claims that are 'independent of or collateral to the removal process.'" *Ibarra-Perez*, 2025 WL
9  2461663, at *9 (quoting *J.E.F.M.*, 837 F.3d at 1032)).

10  Here, as explained above, Petitioner is challenging the legality of her mandatory detention
11  during her removal proceedings without a bond hearing, which is "independent of the removal
12  process" and not a final order or removal. *See J.E.F.M.*, 837 F.3d at 1032. Petitioner is "not asking
13  for review of an order of removal; [is] not challenging the decision to detain [her] in the first place or
14  to seek removal; and [is] not even challenging any part of the process by which their removability
15  will be determined." *Jennings*, 583 U.S. at 294. Respondents' "expansive interpretation of §
16  1252(b)(9) would lead to staggering results," *Jennings*, 583 U.S. at 293, because any questions of
17  law and fact "'aris[es] from' actions taken to remove the [noncitizen] in the sense that the
18  [noncitizen] injuries would never have occurred if they had not been placed in detention." *Id.*
19  "Interpreting "arising from" in this extreme way would also make claims of prolonged detention
20  effectively unreviewable." *Id.*; *see also* Reply at 7. In fact, *Jennings* did not hold that "detention is
21  an 'action taken … to remove' a[] [noncitizen]," *see Jennings*, 583 U.S. at 319 (Thomas, J.
22  concurring), because "the question is not whether detention is an action taken to remove a[]
23  [noncitizen] but whether the legal questions in this case arise from such an action." *See id.* n.4.
24  Therefore, Respondents' reading of Sections 1252(a)(5) and (b)(9) is improper and inconsistent with

Supreme Court and Ninth Circuit precedent. Accordingly, the Court has jurisdiction to hear Petitioner's claims under Sections 1252(a)(5) and (b)(9).[3]

### C. Petitioner is Likely to Succeed on the Merits of her Claims.

The Court first addresses the first factor—likelihood of success on the merits. "Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).

As a preliminary matter, it does not appear that the IJ specifically articulated the basis upon which it found "no jurisdiction." Nevertheless, the Court proceeds on the understanding that the IJ—likely following the BIA's binding decision in *Hurtado* and adopting the argument of DHS in its position paper—determined that Petitioner fell under 8 U.S.C. § 1225(b)(2) and was therefore subject to mandatory detention and not eligible for a bond hearing.

Petitioner contends that her ongoing detention under 8 U.S.C. § 1225(b)(2) and denial of a bond hearing based on the BIA decision in *Hurtado* is unlawful in violation of the INA; according to Petitioner, she falls under Section 1226—which requires a bond hearing—and not Section 1225—which prohibits one. *See* Motion at 13-25; *see also* Petition ¶¶ 53-66. Petitioner contends that she is likely to succeed on the merits of her petition because the plain statutory text, legislative history, and longstanding agency practice all support her position *See* Motion at 14-25. Respondents contend that Petitioner cannot establish a likelihood of success on the merits because the plain statutory text and legislative history all support their position that Petitioner is lawfully detained under Section 1225(b)(2) and any agency practice to the contrary should not, under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024), be accorded any deference. *See* Opposition at 9-11. *See id.* at 12-13.

---

[3] Petitioner argues that any exception to the exhaustion requirement are warranted, so Petitioner does not have to exhaust her administrative remedies by first appealing her underlying IJ bond denial before filing the TRO. *See* Motion at 28-32. The Court need not address any exhaustion argument because Respondents have not raised any exhaustion arguments in its Opposition. *See generally* Opposition. The Court then finds the exhaustion argument conceded.

The Court finds that Petitioner is likely to succeed on the merits of her claims that she is unlawfully detained under Section 1225(b) and should instead be subject to Section 1226(a)'s discretionary detention scheme.

The central question before the Court is what distinction exists, if any, between those noncitizens covered by Section 1226 and those noncitizens covered by Section 1225, and, in particular, whether reading these provisions to contain the distinction Petitioner urges is inconsistent with the plain reading of these provisions. But the Supreme Court has already addressed the question of who is covered by each statute in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). In *Jennings*, the Supreme Court explained that Section 1226(a) and (c) "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings" while Section 1225(b)(1) and (b)(2), which, the Supreme Court explained, "applies primarily to [noncitizens] *seeking entry* into the United States." *Jennings*, 583 U.S. at 289, 297 (emphasis added). Despite this, Respondents urge the Court to look past the distinction established in *Jennings*, insisting that reading these provisions in this way is inconsistent with the plain meaning of Section 1225. *See* Opposition at 9-11. The Court declines to do so as it is bound by the distinction established in *Jennings*.

Given that this Court is bound by the Supreme Court decision in *Jennings*, the Court need go no further and need not independently determine whether this distinction is a proper reading of the statute.[4] The Court notes that this conclusion is in accord with numerous decisions of other district courts who have analyzed the statutes at issue and found the Respondents' reading to be erroneous.

---

[4] The Court understands that in *Hurtado*, the BIA reaches a contrary conclusion. But this Court is bound by *Jennings* and not bound by *Hurtado*. And under *Loper Bright*, the *Hurtado* decision, as a decision of the BIA, is not even necessarily entitled to any deference. *See Loper Bright Enters*, 603 U.S. at 412-13. "*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 412. "[T]he judgment of the Executive Branch may help inform that inquiry," but the "weight" of it would "depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Loper Bright Enters.*, 603 U.S. at 370, 413 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

*See Saldana Guzman v. Noem*, No. 25-9687, at *6-10 (C.D. Cal. Oct. 31, 2025) (analyzing the statutes, rejecting the interpretation of the Respondents and of the BIA, and collecting district court cases on this issue).

### D. Petitioner Will Suffer Irreparable Harm in the Absence of a TRO.

Petitioner contends that in the absence of a TRO, she will continue to be unlawfully detained under Section 1225(b)(2) and denied a bond hearing before an IJ, and she has already been detained without a bond hearing for over thirty-eight days. *See* Motion at 25. Respondents do not contest this prong. *See generally* Opposition.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994); *see also Rodriguez v. Robbins,* 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that there is irreparable harm when noncitizens were "needlessly detained" and subjected to prolonged detention). Here, Petitioner has been detained for over thirty-eight days now. Thus, the Court finds that Petitioner would be irreparably harmed by her continued detention and deprivation of liberty without a bond hearing.

### E. The Balance of the Equities and the Public Interest Weigh in Favor of Petitioner.

The last two *Winter* factors "merge when the government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because the government's policy as applied to Petitioner violates federal law, and it is in the public interest to not retraumatize her as a victim of domestic violence through unlawful detention. *See* Motion at 26-28. Respondents contend that it has "a compelling interest in the steady enforcement of its immigration laws." Opposition at 13-14.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (holding "it would not be equitable or in the public's interest to allow the [Government] ... to violate the requirements of

federal law, especially when there are no adequate remedies available). While Respondents' interest in enforcing its immigration laws is worthy, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)). And given that Petitioner likely succeeds on the merits under Section 1226(a), a TRO would ensure that our nation's immigration laws are followed properly. *See* Reply at 10. There would be no "broad change" in the immigration bond procedures, nor would it "disrupt the status quo" or create "uncertainty," *see* Opposition at 13-14, because a TRO would simply require Respondents to follow the law that DHS has followed for decades prior. Lastly, to any extent Petitioner's unlawful detention is tied to her domestic violence situation and filing of a VAWA self-application, *see* Motion at 27-28, it is in in the public interest to protect victims of domestic violence. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011). Therefore, the balance of equities and the public interest tip sharply in favor of issuing the TRO for Petitioner.

Accordingly, the Court finds that Petitioner has met her burden for a TRO under the *Winters* test.

### F. Bond

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Petitioner's Ex Parte Application for TRO (Dkt. No. 5-1) is GRANTED.
    a. Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order;
    b. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

    c. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case no later than fourteen (14) days of the date of this Order. Petitioner may file a response no later than seven (7) days after Respondents' filing;

    d. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by November 11, 2025. The joint status report shall also address whether the habeas petition is moot.

IT IS SO ORDERED.

Dated: October 31, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge